### IN THE UNITED STATES COURT
### FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| **GORDON ROY PARKER,** | |
| **Plaintiff** | |
| **v.** | |
| **KELLY SERVICES, INC. AND INDEPENDENCE BLUE CROSS, LLC** | **Case No:  15-cv-3337-PBT** |
| **Defendants** | |

### ORDER

AND NOW, this _____ day of July, 2015, upon consideration of Plaintiff's Motion For Leave To Amend, it is hereby ORDERED that the motion is GRANTED.  The Amended Complaint attached as Exhibit A shall be filed by the Clerk as the Amended Complaint, Docket #___.

SO ORDERED.  #gavel

_____
**J.**

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER,** | : | **FILED** |
| **Plaintiff** | : | (JUL 0 7 2015 |
| | : | MICHAEL E. KUNZ ~~~~ Dep Clerk |
| **v.** | : | |
| **KELLY SERVICES, INC. AND** | : | Case No: 15-cv-3337-PBT |
| **INDEPENDENCE BLUE CROSS, LLC** | : | <u>**Civil Rights Complaint**</u>: Multiple causes of action |
| **Defendants** | : | |

### <u>PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT</u>

Plaintiff Gordon Roy Parker, in the above-styled action, moves this Court for leave to file the Amended Complaint, attached hereto as Exhibit A. Plaintiff preemptively blames *The Good Wife* for any errant language in this set of pleadings.

### <u>Background</u>

1.    On July 6, 2015, Plaintiff sought concurrence with counsel for Defendant Independence Blue Cross, LLC ("IBX"), offering to drop his claims against them entirely, in return for not seeking costs. They declined, noting they were filing an answer to the Complaint.

2.    Plaintiff not only should be granted leave to Amend, he could theoretically still a) amend against Defendant Kelly, who has yet to file a responsive pleading, or b) initiate a *new* action, as he has yet to sue under Title VII, and his claims under the Rehabilitation Act are ongoing. Granting this motion promotes judicial economy.

3.    As it stands, only IBX should have grounds to oppose this motion. In the event Plaintiff and IBX find common ground, the Amended Complaint should simply be filed.

WHEREFORE, for the above-stated reasons, the instant motion should be **GRANTED.** An appropriate form of order is attached.

This the 6th day of July, 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

2

### IN THE UNITED STATES COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| **KELLY SERVICES, INC. AND** | : | Case No: 15-cv-3337-PBT |
| **INDEPENDENCE BLUE CROSS, LLC** | : | |
| | : | **Civil Rights Complaint:** Multiple |
| **Defendants** | : | causes of action |
| | : | |

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
### FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff **Gordon Roy Parker,** in the above-styled action, submits this Brief in support of the instant motion.

### Background

1. *"And DOWN the stretch they come!"*

2. Plaintiff lost the footrace:



1978 Belmont Stakes, Photo For Win (Affirmed)

Defendant IBX filed its answer literally *seconds* before Plaintiff would have filed his Amended

Complaint, necessitating Plaintiff to ask for leave to amend.

      3.    Plaintiff's male ancestors from Cedartown, Georgia would have been *appalled* at

Plaintiff's lack of manners, and smited him. Plaintiff has therefore had prayer over his social

*faux pas*, confessed his sin to his preacher, and sought forgiveness from his maker. In doing so,

he averred then, as he does now, that IBX has, in the form of its answer, presented a valid

invitation to this party. Plaintiff apologizes for having attempted to exclude Defendant IBX.

      4.    Plaintiff now extends his hospitality to IBX, inviting them to stay at this party

until the very end. In fact, he now insists, and will *not* take no for an answer! (Except by court

order upon proper motion by IBX, of course).

## II. LEGAL STANDARD

    District courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ.

P. 15(a)(2). As this language suggests, "[a] liberal policy toward allowing amendment to correct

errors in the pleadings clearly is desirable and furthers one of the basic objectives of the federal

rules—*the determination of cases on their merits.*" Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* §1474 (3d ed. 2008). Thus, leave to amend ordinarily should be

denied only when amendment would be inequitable or futile. See Great W. Mining & Mineral

Co., 615 F.3d at 174. "This approach ensures that a particular claim will be decided on the merits

rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).

(Emphasis added)

## III. ARGUMENT

### A.   AMENDMENT IS NEITHER INEQUITABLE NOR FUTILE.

In this case, denying the motion would be inequitable to Plaintiff, and futile for IBX, who was checkmated along with Defendant Kelly, by Kelly's own motion to dismiss. Defendant Kelly literally "kicked the ball into its own net" by making judicial admissions overwhelmingly sufficient to establish a cause of action under the Rehabilitation Act, followed by an epithet-littered declaration that the Act applies only to federal agencies. Plaintiff would have filed a Rule 11 motion to strike as frivolous, but would have drawn the ire of comedians everywhere.

### B.   JUDICIAL ECONOMY DEMANDS LEAVE TO AMEND

The Title VII claims, still timely, have not been pled, and could be pled in a new action that replaces this one. Plaintiff could easily file such an action, including *new* claims under the Rehabilitation Act, which were properly pled to begin with and don't even require amendment, as the Act requires employers to *perpetually* aim towards Plaintiff's employment and self-sufficiency, wherever possible. For as long as they shall take federal money, Defendants have joined *Team Plaintiff*, a position incompatible with their blacklisting, and certainly with their defamation.

### C.   PLAINTIFF COULD HAVE FILED LAST FRIDAY; NOTHING CHANGED.

Plaintiff could actually have filed the instant motion until moments before IBX filed its Answer, but that would not be in the spirit of deciding cases on the merits. For simplicity, Plaintiff was willing to drop IBX entirely and "send them home" for literally nothing in return other than minor cost-bearing, but their response was to increase, rather than decrease, Plaintiff's paperwork. Plaintiff could not avoid the time pressure claimed by IBX, but they could easily moved for more time, or used a temporary e-mail agreement to avoid a default for which

3

Plaintiff had promised not to move. This is a new circumstance under which such an offer is no longer possible.

Defendants have been reduced to naming their poison at this point. There is no set of facts under which they can prevail. How the paperwork plays out will not impact the resolution of this case, only its efficiency in disposition. Plaintiff's meter is not running; Defendants' meters are. Plaintiff needs to get back to work immediately; his *Ticket To Nowhere* needs to become a true *Ticket To Work*.

## CONCLUSION

For the reasons set forth hereinabove, the instant motion should be **GRANTED**. An appropriate form of order is attached.

This the 6th day of July, 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

**EXHIBIT A**

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KELLY SERVICES, INC. AND** | : | **Case No: 15-cv-3337-PBT** |
| **INDEPENDENCE BLUE CROSS, LLC** | : | |
| | : | **Federal Civil Rights Complaint** |
| **Defendants** | : | **For Multiple Causes Of Action** |
| | : | |
| | : | |

### AMENDED COMPLAINT

Plaintiff Gordon Roy Parker, in the above-styled action, submits this Amended Complaint.

### I.    THE PARTIES

1.    Plaintiff Gordon Roy Parker is an adult male resident, domiciled and residing in the Commonwealth of Pennsylvania.

2.    Defendant Kelly Services, Inc. ("Kelly") is a temporary and temp-to-perm employment agency, and federal *human-resources* contractor, in control of a substantial amount of federal employment.  They have entered their appearance in this case.

3.    Defendant Independence Blue Cross ("IBX") is an insurance provider and federal contractor headquartered in Philadelphia, who has entered their appearance in this case.

### NATURE OF ACTION

4.    Defendants have broken so many laws that Plaintiff will list all charges, detailing the most egregious violations, and expanding on any others with leave to amend (when correctable),

as the need arises. Defendant admitted to so much actionable conduct in its Motion To Dismiss that discovery is no longer necessary, and this court should immediately award summary judgment (or judgment on the pleadings) to the Plaintiff.

5.     The primary claim was the one first filed, under Section 503 of the Rehabilitation Act of 1973, which Defendant Kelly a) admitted to violating, prior to b) claiming the law did not apply to it because it is not a federal agency. Section 503 is not some obscure law whose oversight is explainable, but was the centerpiece of 1994's ***Academy Award For Best Picture, Philadelphia***, whose lead character, Andrew Beckett (Tom Hanks), sued a fictionalized firm who had taken over the offices of ***Mesirov et al.*** at 1735 Market Street, for violations of the Rehabilitation Act Of 1973. <u>Doe v. Kohn</u> was based on the same statute, yet Kohn was a lawfirm, ***not*** a federal agency. Simply put, a Philadelphia law firm municipally shamed our fine city by botching the law on which ***Philadelphia*** was based, while using the ***F-word*** (frivolous) on Plaintiff.

6.     Claims also exist under a) the Americans With Disabilities Act ("ADA"), b-c) the gender and retaliation provisions of Title VII of the Civil Rights Act of 1964 (42 USC 2000e et seq.) d) the ADEA, e) Equal Pay Act, and the state-law torts of f) gross negligence, g) breach of fiduciary duty, h) defamation, i) tortious interference, j) wrongful termination, k) failure to hire in the public interest, and l) civil conspiracy.

## STATEMENT OF JURISDICTION AND VENUE

7.     Jurisdiction and venue are not likely to be contested in this case, as ***this is everyone's "home court" and numerous federal questions exist***. If challenged, Plaintiff will sufficiently brief the court in response, but the foregoing highlighted text should be sufficient to plead.

2

## BACKGROUND FACTS

8. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

### Plaintiff Becomes A Kelly GIRL

9. Immediately after his final-round disaster in the 1987 World Open (extending a long history of spectacular failures by local players at this event), Plaintiff realized he would need a regular job to support his chess training, so he registered with Defendant Kelly as a temp.

10. The next day, Plaintiff was hired "indefinitely" at a rate of $7.00 an hour to stuff envelopes and type addresses on them at Atlantic Financial, in an office with fifty-one women and him (plus a male supervisor). Five weeks into the assignment, he quit to prepare for the Labor Day chess tournaments, and registered with four other agencies in the city.

11. Though Plaintiff worked for Kelly intermittently, including in Manhattan in 1988, his rates of $9.00-10.00/hour in Philadelphia, and $13.00-15.00 an hour in Manhattan, were lower than the $12.00 he could earn at home, and the $18.00 an hour he pulled while subletting in New York. Through June, 1991, Plaintiff continued to temp regularly, while holding down a part-time job as a receptionist, where he was encouraged to pass time training at chess. He then took fulltime jobs for one year each, with Sol Sardinsky, CPA, and the University of Pennsylvania, returning to temping in September, 1993 after resigning from a database position at Wharton.

12. In September, 1993, Kelly sent Plaintiff to a big-six accounting firm, where Plaintiff wound up staying until *8:45 p.m.* to work for a *partner*. He also worked at Blue Cross for a few days, where his work continued to receive high praise, as it had in 1987. When Plaintiff once walked off an assignment due to a co-worker, Kelly suggested he not do that, but seemed more concerned that Plaintiff would quit than with disciplining him.

3

13.   In late September, 1993, Express Personnel sent Plaintiff to Arthur Anderson & Company, at a rate of $11.00 an hour, where Plaintiff landed a position which *required* a college degree, and, according to his placement person at Express, *"walked on water."*

14.   In early December, 1993, Plaintiff stormed out of Anderson, exclaiming "*I don't take money from Satan!,"* effectively beginning his career as a whistleblower by informing all of white-collar center-city that he was a ___snitch___.  He retreated to his receptionist gig at just above minimum wage, his "survival job," also ensuring resume stability.  At the job, he had replaced chess with writing, mostly about dating, gambling, or on topics of interest to men, and was making additional money as a freelance word processor from home.

15.   During the "ice winter" of 1993-94, in late January, Defendant Kelly sent Plaintiff to Drexel University for a second time, to work in the Provost's office.  Plaintiff walked out after feeling unappreciated for covering an entire absent office, yet still being criticized. He took a week or so off, for bodybuilding and writing, continued to work as a receptionist, and then took a few weeknights off to begin his second IBX assignment for Kelly, in February.  As a twenty-seven year-old bodybuilder, with exceptional office skills and experience, Plaintiff was anything but "unemployable."  He was hired twice more in 1994 after being terminated from Kelly/IBX.

16.   While on assignment at IBX, Plaintiff experienced the following:

a.   A fellow departing *Kelly GIRL*, Lonnie Berger (male), who trained Plaintiff at this $7.50-an-hour job (life of a whistleblower), who was violating a license suspension (DUI) by driving to work, apparently not as a *security threat* to anyone.  Berger would impose himself upon Plaintiff, inviting himself to lunch twice and making "small talk" perpetually.

4

b.    An IBX employee, Valerie Molmer, who shared sexual-harassment horror stories related to her by her friends, and then let slip to Plaintiff that then-State Senator Vincent Fumo controlled the HR department at IBX, as his "personal political patronage mill."

c.    A supervisor who got wind from Berger that Plaintiff was a whistleblower, and onto the pay-for-play scheme between IBX and Fumo; and

d.    A six-foot-eight, three-hundred-plus pound, musclebound security guard, who informed Plaintiff he was being terminated for "disorientation" (whistleblowing), and advised that "[then] was not the time for argumentation." Plaintiff felt extremely physically intimidated by this guard, and would gladly have left on his own without incident.

e.    Loren, the *Kelly GIRL* supervisor who told Plaintiff that, based solely on word from IBX, that Plaintiff would *never ever ever ever never never never* again be a *Kelly GIRL*.

17.   Shortly after his termination from the IBX assignment, Plaintiff encountered his neighbor, PCHR director Kevin Vaughn, with whom he shared his experiences with Kelly, IBX, and with the late Sol Sardinsky, who claimed that the 2700 block of Brown Street in Philadelphia was a "white block," when explaining why he did not rent to minorities. In response to his query about Fumo, Vaughn agreed (with a "knowing smirk and chuckle") when Plaintiff stated that he felt he was "taking his life into his hands" if he took on Fumo. At twenty-seven, Plaintiff had too much life to live; at forty-eight, in his medical condition, that fear is gone.

### Defendant's Admissions

18.   Astonishingly, and without prompting, Defendant has supplied Plaintiff with nearly complete discovery, in the form of admissions to the conduct which forms the basis of this lawsuit, leaving few, if any, major undisputed facts. Defendant's Motion To Dismiss is attached hereto as Exhibit A and incorporated by reference as if fully stated verbatim herein.

5

19.    Upon his termination from Kelly, Plaintiff contacted Kelly intermittently over the ensuing several years to protest his firing, and make various demands for reinstatement. Apparently, Kelly felt so threatened by these calls that they filed "multiple police reports" against Plaintiff, with **corporate security** deeming Plaintiff a **security threat**, who should "never be allowed to enter a branch, and never be hired again." (or something like that)

20.    The police never contacted Plaintiff concerning his calls to Kelly, which were intended as a standard whistleblower's protest designed to attract temporary attention to Plaintiff's cause.  Unknown to Kelly, but certainly known to the police, was that Plaintiff's receptionist job placed him in a highly sensitive **security** position over UPenn students and visitors, a dark contrast to the portrait Defendant had painted to the Philadelphia Police.  The statute of limitations for this conduct has traveled thrice to heck and back in the interim.

21.    Also upon his termination from Kelly/IBX, neither Defendant did anything other than fire Plaintiff.  Plaintiff was never advised of his disability options, nor was he even **asked** if he was mentally ill, which he was, having been diagnosed in 1984, secondary to a suicide attempt.

22.    Prior to the 1994 incident at IBX, Plaintiff had always been high-functioning.  His income from that point forward "dropped off a cliff," from $22,000.00+ earned in 1993 (steadily increasing), to next to nothing until 2000 (due to a lagging internet business), and finally stabilizing around $9,000.00 a year until 2009, when Plaintiff lost his freelance medical transcription gig in 2001, the long-term replacement for his receptionist gig.  Even though his annual income was low, his **hourly** rate averaged $20.00+, running as high as $50.00 for some rush jobs.

23.    Defendant's Motion To Dismiss tells the remainder of the story: intermittent protest calls from Plaintiff to Kelly, and occasionally IBX, through 2015, with Plaintiff asserting that he

was calling pursuant to his *Ticket To Nowhere/Ticket To Work*, and pursuant to the Rehabilitation Act of 1973, whose new, enhanced rules placed Plaintiff, for the first time, under the umbrella of affirmative action.

24.   Plaintiff reached out to both Defendants numerous times in 2014, seeking only reinstatement at a modest salary, and warning (they called it threatening) that he would file suit if his demands for mitigation were not met.  In return, Defendant contacted law enforcement, and continued to refuse to punch Plaintiff's *Ticket To Nowhere.*

25.   Through 2014, including the filing of the administrative portion of this action, Plaintiff had no idea what the Office of Vocational Rehabilitation even *was,* let alone that they hoard jobs for him (one of their staffers called the seven-percent *goal* a *quota,* prompting Plaintiff to consider filing suit).  Defendants, to whom Plaintiff had trusted his career options, never thought to inform Plaintiff of the OVR, or to recommend he seek SSDI (or Workman's comp) let alone *be* one of the ultimate employment solutions for the disabled Plaintiff.  As Plaintiff said in the Complaint: *"These federal contractors do not care."*  The law really does require them to care.

26.   In a timely manner, in late 2014, Plaintiff filed his charges of discrimination with the Equal Employment Opportunity Commission (EEOC), charging discrimination based on race, gender, age, and retaliation against Kelly, and claiming retaliation against Blue Cross.

27.   In May, 2015, at his request, Plaintiff was issued his Dismissal And Notice Of Right To Sue in both cases.  The EEOC letter for Kelly is attached hereto as Exhibit C and incorporated by reference as if fully stated verbatim herein.  He then filed this suit on June 15, 2015, and replied to Defendant's Motion To Dismiss concurrently with this filing.

28.   In June, 2015, just prior to filing suit, and as set forth in Exhibit B, Plaintiff called Defendant Kelly's New York City office to report his availability for work.  He did this because

7

repeated attempts to call Kelly corporate led nowhere, New York City was "neutral territory," and Plaintiff believes that his "ideal job" is that of paralegal for a Manhattan law firm whose practice is primarily in the housing court. The *Ticket To Nowhere* program, and the Rehabilitation Act in general, strongly encourage this type of reaching out, yet Defendant Kelly wants to vilify Plaintiff for attempting self-sufficiency.

29.   Plaintiff has also contacted IBX several times during the period in controversy, most recently earlier in 2015, in the hope that they would hire him, but they refused him as well.

30.   Plaintiff avers that not only has he made every attempt to mitigate his damages by repeatedly asking Defendants to hire him, only to have them repeatedly turn around and, for a retaliatory motive, use this very conduct to falsely impute criminal conduct.

31.   In its Motion To Dismiss (Exhibit B), Defendant Kelly explained that, because it is not a federal agency, that it is not bound the Rehabilitation Act.

32.   Plaintiff avers, based literally on the pleadings, that he is qualified to work as, among many other things, a paralegal, legal secretary, legal analyst, and mock adversary, titles for which Defendant Kelly routinely places workers, and for which IBX has positions intermittently. Plaintiff further avers, based literally on the pleadings, that defense counsel could definitely use his help.

33.   Plaintiff avers that both Defendants have never even *tried* to do anything other than blacklist Plaintiff, and ruin his career by refusing to hire, and refusing to adhere to the spirit of the public interest in Plaintiff's self-sufficiency.

34.   Plaintiff avers that, at all relevant times, Defendant IBX was acting vicariously through, jointly, and in full conspiracy with Defendant Kelly (and *unnamed co-conspirator,*

State senator Fumo, who will have to live without his day in court this time), with each bearing the full legal responsibility for individual acts of the other, as if they were its own.

## COUNT ONE:
## VIOLATIONS OF THE REHABILITATION ACT OF 1973 (BOTH)

35.  Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

36.  Plaintiff is on SSDI (it's bringing him down), and is clearly disabled. *Financially*, Plaintiff was ruled disabled by the SSA in 2011 (the earliest possible date under their formula). *Medically*, Plaintiff was first diagnosed with mental illness in 1984.

37.  Plaintiff is qualified for and has held numerous positions in his life, can "crank out" loads of work as a freelancer in numerous fields (tape and video transcription, writing, litigation support, etc.). He has a 4.0 GPA from a major university, over thirty years of experience in a wide variety of fields, extensive internet experience, and appears uniquely and ideally qualified for the newly created title of *Chief Information Officer*, whose requirements match up perfectly with Plaintiff's long history of professionalizing his interests in chess, gambling, politics, and culture. To survive, he needs *one* job.

38.  Plaintiff does require several reasonable accommodations to work, most notably that he be allowed to work from home, or in isolation, and avoid contact with others, to avoid stigma. His physical concerns require accommodation as needed. Defendant's *permaban* on Plaintiff's employment of course means these issues remain unexplored.

39.  Even for positions where he is by far the *best* qualified (the reason he was at IBX in the first place), Defendants refuse to budge from their position that Plaintiff is a *security threat*. (*It's a Whistleblower! RUN FOR YOUR LIVES!!!*).

9

40.  Even if Plaintiff *were* the "security threat" claimed, working from his home, or in guarded isolation on-site, would neutralize any risk.

41.  As federal contractors (Kelly is a ***human-resources*** contractor), Defendants are state actors, and are therefore acting under color of law.

42.  Defendants' conduct ***as a whole***, as set forth hereinabove (termination, calling police, refusal to reinstate, refusing to refer to OVR/SSA, and more), constitutes violations of the discrimination and retaliation provisions of the Rehabilitation Act of 1973.  Plaintiff states this claim for relief on that basis, specifically that of being denied work, referrals for work (OVR, SSA, and private employers, etc.), and of being retaliated against for whistleblowing.

43.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm in the form of lost wages, lost career opportunities, lost secondary income from investing, a markedly reduced retirement and disability benefits, involuntary poverty, extreme *emotional distress* (bring on the Rule 35 motions), near-total ostracization and exclusion from mainstream society, and the loss of his prime years, leaving him on SSDI at age forty-eight, at $867.00 a month of poverty, with a lifespan of maybe a decade, if he is fortunate; Defendant IBX's actuarials could make a forecast which satisfies Daubert.

44.  For any violation by Defendants' which occurred prior to the filing of this lawsuit, Plaintiff had not acted earlier out of fear of retaliation.  For any violation prior to 2014, Plaintiff had not acted out of fear for his life, a fear he no longer has, even the threat remains.

45.  Plaintiff is entitled to reinstatement, back and front pay, compensatory and punitive damages, costs and attorney fees, and injunctive relief sufficient to make him whole.

10

## COUNT TWO:
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (ADA) (BOTH)

46. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

47. This count is alternative and supplementary to Count One above. It is based on the same averments, entitling Plaintiff to identical damages to those claimed in Count One.

## COUNT THREE:
## TITLE VII VIOLATIONS (GENDER)

48. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

49. Both Defendants afford astronomically greater opportunities for females in Plaintiff's administrative capacity than for similarly and identically situated males, in the form of increased wages, increased employment and referrals for employment, increased promotions, and working conditions. Kelly's discrimination is universal, spilling over to the citywide labor market. The discrimination is pervasive, occurs at every step of the process, and is so ingrained that Defendant still takes pride in having once been called *The Kelly GIRL People*.

50. Both Defendants' are state-acting federal contractors whose affirmative-action policies violate the Equal Protection Clause of the Fourteenth Amendment, because EO11246, and its progeny, presume a nonexistent, universal privilege for males, even in secretarial work. This warps the *utilization* formula, whereby 85 percent secretarial incumbency is viewed as *underutilization*, because the area incumbency is 92 percent, rather than using *male* incumbency as the benchmark. The simple fix to the formula is to "flip the script" in female-dominated professions to measure *male* utilization, such as when male secretaries are nonexistent, as is the

11

case among Kelly's clients, and even Kelly, who *redlined* two men into this lower-paying position, while reserving "plum" higher-paying assignments for young, attractive, *white* women.

51. Both Defendants discriminate against male *legal* secretaries, paralegals, and litigation-support staff, via their requirement for "law-office experience," a pretext for excluding males based on their knowledge of a citywide practice among lawyers to restrict entry-level employment to part-time, after-school jobs for which only students at *all-girl Catholic schools* are recruited (Goretti did merge with a boys' school so this may have abated somewhat).

52. Indeed, to find the high-level law-office job for which Plaintiff was truly qualified, in September, 2000 he had to *"haul a\*\*,"*as his boss, the late Earl "Brother" Jones, a former Albany, Georgia District Attorney, would have put it. The *Jones Law Firm* paid $3,000.00 to relocate Plaintiff, and paid him *$500.00 a week* in total compensation before downsizing due to money. Plaintiff was the firm's *administrator* (as had Lilia Lawler, Esq. in August, 1994 for her startup bankruptcy practice), before Plaintiff returned to Philadelphia in February, 2001, specifically to bring Parker v. University of Pennsylvania. Claims that Plaintiff is "vexatious" are belied by his specifically avoiding "defenseless" targets. That lawsuit started the internet chain that led to many of the cases cited by Defendant Kelly in its motion.

53. Defendants' conduct, as set forth hereinabove, violates the gender-discrimination provisions of Title VII, with Defendant Kelly's conduct a proxy for systematic, citywide gender-discrimination which is Defendant's bread-and-butter. They are no longer *The Kelly GIRL People* in name only, and still do things the "old way." Plaintiff states this claim for relief on that basis.

12

54. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of income, loss of retirement income, loss of dignity, loss of career opportunity, social backlash, defamation, ridicule, and an inability to function ideally ("loss of enjoyment of life").

55. Plaintiff is entitled to reinstatement, compensatory damages for back wages, punitive damages for intentional conduct, costs and attorney fees, and injunctive relief sufficient to terminate the actionable conduct.

## COUNT FOUR:
## TITLE VII VIOLATIONS (RETALIATION)

56. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

57. Defendants' contact, from the original incident, has not wavered, even as the law has evolved to the point where they are *required* to take affirmative action for Plaintiff, a man who temped without incident in two cities for six years for one Defendant, including being called back to the other.

58. Plaintiff avers that temporal proximity alone proves a violation of the retaliation provision of Title VII, and states this claim for relief on that basis.

59. Plaintiff further avers that the defamation and blacklisting involved repeating statements admitted here in nonprivileged settings, constituting further retaliation.

60. As a direct and proximate result of Defendants' retaliation, Plaintiff has endured all the horrible things that come with Title VII retaliation, including a ruined career and resume, extreme emotional distress, fear for his physical safety and life, and a sense that his whistleblowing efforts were completely wasted, except that it has made him a target for an entire global internet full of his political adversaries.

13

61.   Defendants' conduct, as set forth hereinabove, violates the retaliation provisions of Title VII, with Defendant Kelly's conduct a proxy for systematic, citywide gender-discrimination which is Defendant's bread-and-butter. They are no longer *The Kelly GIRL People* in name only, and still do things the "old way." Plaintiff states this claim for relief on that basis.

62.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of income, loss of retirement income, loss of dignity, loss of career opportunity, social backlash, defamation, ridicule, and an inability to function ideally ("loss of enjoyment of life").

63.   Plaintiff is entitled to reinstatement, compensatory damages for back wages, punitive damages for intentional conduct, costs and attorney fees, and injunctive relief sufficient to terminate the actionable conduct.

## COUNT FIVE:
## AGE DISCRIMINATION UNDER THE ADEA (KELLY)

64.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

65.   Discovery will conclusively show that Defendant Kelly systematically favors attractive young women in all aspects of recruitment, hiring, advancement, and referral for employment. They are still very much *The Kelly GIRL People*. Additionally, Defendant's policies, as a whole, create a disparate-impact on the aged workers.

66.   Defendant Kelly's conduct, as set forth hereinabove, violates the ADEA. Plaintiff states this claim for relief on that basis.

67.   As a direct and proximate result of Defendants' retaliation, Plaintiff has developed a much greater understanding of *Death Of A Salesman*. He has lost income, retirement benefits, and suffered isolation, ostricization, and is *bored* to tears on his *Whisability*, not helping his country's GDP with productive labor. Plaintiff, literally, has become *Too Broke To Fail*.

14

"Losing" this lawsuit leaves him with $200,000.00+ over the next twenty years which he did not earn, yet has no choice to accept, due solely to stigma and retaliation. On the upside, Plaintiff has never been stronger at chess, nor his training better funded.

68. Plaintiff is entitled to reinstatement, compensatory damages for back wages, punitive damages for intentional conduct, costs and attorney fees, and injunctive relief sufficient to terminate the actionable conduct.

## COUNT SIX:
## EQUAL PAY ACT VIOLATIONS (BOTH)

69. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

70. The Lilly Ledbetter Act resets the statute of limitations for the Equal Pay Act with "each new paycheck affected by that discriminatory action." Regardless, the statute of limitations is well-tolled.

71. Plaintiff was paid less for comparable work than comparably skilled women.

72. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost retirement benefits, and lost investment income.

73. Plaintiff is entitled to the gap in back wages as compensatory damages, punitive damages, injunctive relief as necessary, costs and attorney fees, and other relief to make him whole.

## COUNT SEVEN:
## GROSS AND SIMPLE NEGLIGENCE (BOTH)

74. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

75.   Both Defendants had a *duty* to inform Plaintiff of his true employment situation, both with them, and their projections for the workforce at large, so that Plaintiff could better weigh his options. In Plaintiff's mind, he was a fired whistleblower, with nothing wrong, and he did manage to get better jobs twice that year, while continuing to work at a third. Nevertheless, if this was part of some denial, both Defendants *owed* it to Plaintiff to refer him to the SSA and OVR, or at least an independent psychologist, for proper evaluation. As the law has evolved to now, but was back then, at all times both Defendants were supposed to at least *pretend* to be "on Plaintiff's side," yet they never were, all to protect a RICO enterprise run by Fumo.

76.   Defendants' conduct, which has continued well past being put on notice for recent events, violates the Pennsylvania tort of Gross Negligence; Plaintiff states his claim for relief on that basis. Alternatively, he claims for simple negligence.

77.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm in the form of lost referrals for employment through government agencies like the OVR and SSA, an SSDI benefit below the poverty level, instead of a proper benefit, and/or Workman's Comp reduced-income benefit.

78.   Plaintiff is entitled to compensatory damages in the form of all money lost to the negligence, including Plaintiff's reduced SSDI benefit, punitive damages, costs of suit and attorney fees, injunctive relief sufficient to terminate the actionable conduct, and other relief deemed just and proper to make Plaintiff whole.

## COUNT EIGHT:
## BREACH OF FIDUCIARY DUTY (BOTH)

79.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

16

80.   Defendant Kelly, as Plaintiff's *agent*, had a fiduciary duty to Plaintiff to safeguard his career, within the context of his skills and earned opportunities, a duty which extended to defendant IBX while Plaintiff was on assignment at that firm.  Both firms equally breached this duty when they tossed Plaintiff to the wind, rather than work with him and enable him to find his proper place in the workforce, even if that place was on SSDI.  Instead, Plaintiff struggled for *decades*, finally capitulating when he could no longer survive, rather than take the easy way out in 1994, with the full support of these two federal contractors, who were much happier to keep Plaintiff in the dark, in a textbook example of detrimental reliance.

81.   Even as the Rehabilitation Act continued to evolve, with major expansions in the past year, just prior to Plaintiff resuming his job search, and winding up with his *Ticket To Work (Ticket To Nowhere)*, Defendants' intransigence never wavered, without regard to the responsibility that comes with taking federal money.  Plaintiff, who has to take federal money to survive because Defendants have *defrauded* them regarding why he cannot earn money, considers it his *duty* to clear the record, which he has been doing in stages, as various threats to his livelihood, life, physical safety, reputation, and innocent witnesses abate.  None of this would have happened had either Defendant simply obeyed the law.

82.   Defendants' conduct, as set forth hereinabove, entitled Plaintiff to relief under the Pennsylvania tort of Breach of Fiduciary Duty; Plaintiff states this claim for relief on that basis.

83.   As a direct and proximate result of Defendants' breach, Plaintiff is now facing poverty for the remainder of his life, due to a ridiculously deflated SSDI benefit of $867.00, less than half what it would have been, were Defendants' story to be believed.  To not believe Defendants' story means Plaintiff never belonged on SSDI in the first place, which he did not, save for Defendants" need to conceal their racketeering by attributing Plaintiff's behavior not to disgust at

what he witnessed at IBX, but a mental illness so severe that it all but automatically qualified him for *whisability* benefits. Even these allegations are still the tip of the iceberg.

84.  Plaintiff is entitled to identical damages to those claimed in Count Seven above.

## COUNT NINE:
## DEFAMATION (BOTH)

85.  Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

86.  Kelly defamed Plaintiff when Berger communicated falsehoods about Plaintiff's mental condition to Defendant IBX, who defamed Plaintiff when they repeated the slander to Defendant Kelly.

87.  Both Defendants have defamed Plaintiff via "compulsory defamation" in the form of letters of reference, permission to contact for references, and Defendant Kelly's misrepresentation to the world that Plaintiff is unfit for employment and a "security threat."

88.  Defendant Kelly's refusal to hire Plaintiff constitutes false-light defamation by representing to the labor market at large, including the federal government, that Plaintiff is unfit and unavailable to work.

89.  The statements were a) communicated (by omission) to third parties, who b) understood their defamatory meaning, were not c) privileged, or d) consented to, causing Plaintiff to e) lose his job with Kelly, his assignment at IBX, and all future opportunities, to the point where he is now living on the dole.

90.  Defendant Kelly's defamatory statements in its Motion To Dismiss have been repeated previously in unprivileged environments.

91.   Defendants' conduct, as set forth hereinabove, entitles Plaintiff to relief under the Pennsylvania tort of Defamation, including libel, slander, trade libel, and injurious falsehood. Plaintiff states this claim for relief on that basis.

92.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm to his career, reputation, personal life, and had to endure having his employability challenged by UPenn, while simultaneously being exploited by other employers, who knew Plaintiff could not speak out, as his witnesses were being threatened (see Parker v. University of Pennsylvania, 02-cv-567).  A motion to set aside judgment in that case is pending.

93.   Plaintiff is entitled to compensatory and punitive damages, costs of suit and attorney fees, and injunctive relief sufficient to make him whole and terminate the actionable conduct.

**COUNT TEN:**
**TORTIOUS INTERFERENCE (BOTH)**

94.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

95.   The underlying facts from Count Nine above also entitle Plaintiff to identical relief to that sought in Count Nine under the Pennsylvania tort of Tortious Interference.  Specifically, the contracts interfered with are Plaintiff's with a) IBX, b) Kelly, and c) prospective employers who are Kelly clients.  Plaintiff states this claim for relief on that basis, and seeks identical damages to Count Nine.

**COUNT ELEVEN:**
**WRONGFUL TERMINATION UNDER THE PHRA (BOTH)**

96.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

97. It is public policy to employ the disabled, not to fire whistleblowers, and to stop political patronage schemes like Fumo's.

98. Plaintiff's termination was against public policy.

99. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm, including lost income, lost retirement income, lost enjoyment of life, loss of personal and professional reputation, extreme emotional distress,

100. Plaintiff is entitled to relief under the wrongful-termination provision of the PHRA, and states this claim for relief on that basis.

101. Plaintiff is entitled to reinstatement, back and front pay, costs and attorney fees, compensatory and punitive damages, and injunctive relief sufficient to terminate the actionable conduct, and to make Plaintiff whole.

## COUNT TWELVE:
## FAILURE TO HIRE IN THE PUBLIC INTEREST (BOTH)

102. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

103. Robin Leach would say:

> *Plaintiff is enjoying a life without the pressure of work, paid for by the government. He spends his days playing chess, and his nights out, all on YOUR tax dollars! Marcie, the stripper he plied with money and champagne last Friday, said he couldn't be happier! Plaintiff is living without a care in the world while YOU live paycheck to paycheck! When asked if he should get a job, he said "are you hiring?"*

104. Defendants' conduct, as set forth hereinabove, constitutes a failure to hire in the public interest. Plaintiff states this claim for relief on that basis.

105. As a direct and proximate result of Defendants'' conduct, Plaintiff has suffered loss of dignity, loss of earnings, loss of enjoyment of life, and the shame and humiliation which comes

20

with life on the dole. He feels duty-bound to clear the record regarding why he wound up on SSDI, and why he never should have, for financial, rather than medical reasons. Plaintiff is unquestionably disabled, but it is the *stigma* of whistleblowing and disability ("whisability") that pummels his income to the point of qualifying for SSDI. Defendants are content to perpetually defraud the federal government into giving Plaintiff what amounts to *hush money* in order to fend off lawsuits like this.

106. Plaintiff is entitled to reinstatement, back and front pay, costs and attorney fees, compensatory and punitive damages, and injunctive relief sufficient to terminate the actionable conduct and make him whole.

## COUNT THIRTEEN:
## CIVIL CONSPIRACY (BOTH)

107. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

108. Defendant IBX could have just ended the assignment with Plaintiff, without causing termination from Kelly, but wantonly, willfully, and maliciously enlisted Plaintiff's bread-and-butter temp agency, the one which hired an inexperienced male with far less skills than the one who had been working fulltime for almost four straight years in offices, and longer in general, into 1994. That conduct, as set forth hereinabove, established the conspiracy.

109. Plaintiff is entitled to relief under the Pennsylvania tort of Civil Conspiracy, and states this claim for relief on that basis.

110. As a direct and proximate result of Defendants conspiring with each other, Plaintiff lost an *employer* rather than a single assignment, for no valid reason, and to punish his whistleblowing. This has cost him income, retirement income, career advancement, loss of enjoyment of life, and caused extreme emotional distress.

111. Plaintiff is entitled to reinstatement, back and front pay, costs and attorney fees, compensatory and punitive damages, and injunctive relief sufficient to terminate the actionable conduct and make him whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief from this Court:

1.   Back wages dating back to February, 1994, in an amount not less than SIX HUNDRED THOUSAND DOLLARS ($600,000.00).

2.   Reinstatement.

3.   Compensatory damages other than wages in an amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00).

4.   The maximum punitive damages allowable by law.

5.   A declaration that Plaintiff never belonged on SSDI, and would never have *been* on SSDI, were it not for Defendants' illegal conduct qualifying him financially for SSDI by taking away Plaintiff's livelihood.

6.   Such other and further relief deemed necessary to make Plaintiff whole.

This the 6th day of July, 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER                          :
4247 Locust Street # 119                   :
Philadelphia, PA 19104                     :
(267) 298-1257                             :            CIVIL ACTION
SnodgrassPublish@aol.com                   :
                                           :
           Plaintiff,                      :            No. 15-3337
                                           :
      v.                                   :
                                           :
KELLY SERVICES, INC.                       :
1760 Market Street, #902                   :
Philadelpia, PA 19103, and                 :
                                           :
INDEPENDENC BLUE CROSS,                    :
1900 Market Street,                        :
 Philadelphia, PA 19103                    :
                                           :
           Defendants.                     :
                                           :

## DEFENDANT'S MOTION TO DISMISS IN LIEU OF ANSWER TO COMPLAINT

NOW COMES, Defendant, KELLY SERVICES, INC., by and through its attorneys,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, and, pursuant to Fed. R. Civ.

P. 12(b)(6), and L.R. 7.1, moves this Court for entry of dismissal of Plaintiff's Complaint with

prejudice and, in support thereof, relies upon its accompanying Brief with Exhibits which are

contemporaneously filed herewith.  Defendant requests that the Court allow oral argument on

the issues raised in its Motion to Dismiss..

                                    WILSON, ELSER, MOSKOWITZ,
                                    EDELMAN & DICKER LLP

Dated: July 1, 2015

                              BY:   s/Maria G. Perri
                                    _____
                                    Michael S. Takacs, Esquire
                                    Maria G. Perri, Esquire

Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, Pennsylvania 19103
michael.takacs@wilsonelser.com
maria.perri@wilsonelser.com
Tel: 215-627-6900 / Fax: 215-627-2665
*Attorneys for Defendant, Kelly Services, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER                  :
4247 Locust Street # 119           :
Philadelphia, PA 19104             :
(267) 298-1257                     :          CIVIL ACTION
SnodgrassPublish@aol.com           :
                                   :
          Plaintiff,               :          No. 15-3337
                                   :
     v.                            :
                                   :
KELLY SERVICES, INC.               :
1760 Market Street, #902           :
Philadelpia, PA 19103, and         :
                                   :
INDEPENDENC BLUE CROSS,            :
1900 Market Street,                :
 Philadelphia, PA 19103            :
                                   :
          Defendants.              :
                                   :

**BRIEF IN SUPPORT OF MOTION TO DISMISS IN LIEU OF
ANSWER TO COMPLAINT**

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

Dated: July 1, 2015

BY:  *s/Maria G. Perri*
     Michael S. Takacs, Esquire
     Maria G. Perri, Esquire
     Two Commerce Square
     2001 Market Street, Suite 3100
     Philadelphia, Pennsylvania 19103
     michael.takacs@wilsonelser.com
     maria.perri@wilsonelser.com
     Tel: 215-627-6900
     Fax: 215-627-2665
     *Attorneys for Defendant, Kelly Services, Inc.*

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES................................................................................................... iii

I.          FACTUAL BACKGROUND................................................................................1

II.      LEGAL ARGUMENT..........................................................................................4

      A.    Plaintiff's Complaint Fails to State a Claim ...........................................4

III.     RELIEF REQUESTED........................................................................................6

## INDEX OF AUTHORITIES

**Cases:**

*Ascroft v Iqbal,*
    129 S Ct 1937 (2009)................................................................................4,5,6

*Bell Atlantic Corp v Twombly,*
    550 US 544 (2007)....................................................................................4

*Emrit v Independent Music Award, IMA,*
    2015 wl 3482797 (3d Cir.2015)..............................................................4

*Fowler v UPMC Shadyside.,*
    578 F3d 203 (3d Cir.2009).......................................................................4

*Smith v State Farm Mut Auto Ins,*
    506 Fed Appx 133 (3d Cir.2012)............................................................4

*Wishkin v Potter,*
    476 F3d 180 (3d Cir.2007).......................................................................5

**Statutes:**

29 U.S.C. § 701.................................................................................................5

**Rules:**

Fed.R.Civ.P. (8) ...............................................................................................4

Fed.R.Civ.P. 12(b)(6)....................................................................................4, 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER                       :
4247 Locust Street # 119                :
Philadelphia, PA 19104                  :
(267) 298-1257                          :               CIVIL ACTION
SnodgrassPublish@aol.com                :
                                        :
              Plaintiff,                :               No. 15-3337
                                        :
       v.                               :
                                        :
KELLY SERVICES, INC.                    :
1760 Market Street, #902                :
Philadelpia, PA 19103, and              :
                                        :
INDEPENDENC BLUE CROSS,                 :
1900 Market Street,                     :
 Philadelphia, PA 19103                 :
                                        :
                                        :
              Defendants.               :
                                        :

## BRIEF IN SUPPORT OF MOTION TO DISMISS IN LIEU OF ANSWER TO COMPLAINT

COMES NOW Defendant KELLY SERVICES, INC., by and through its attorneys

WILSON ELSER MOSKOWITZ EDELMAN & DECKER, LLP, and, hereby submits its Brief

in Support of its Motion to Dismiss.

### FACTUAL BACKGROUND

Plaintiff is a former employee of Defendant Kelly Services, Inc. (hereinafter "Kelly").

Kelly is a global staffing company that provides workforce solutions to its customers. As a

staffing company, Kelly provides jobs to employees and assists customers with their recruiting

efforts.

iv

Plaintiff was hired by Kelly in 1987. (Exhibit A, Plaintiff's Charge of Discrimination). Plaintiff's assignment with Kelly's customer, Independence Blue Cross, was allegedly terminated in 1994. (Exhibit A).

Subsequent to the termination of Plaintiff's assignment in the mid 1990's, Plaintiff began making numerous telephone calls to Kelly wherein he threatened Kelly and verbally abused Kelly employees. (Exhibit B, KSN dated March 3, 2011). Plaintiff's telephone calls were so frequent that Kelly was forced to file numerous police reports with the Philadelphia Police Department regarding Plaintiff. (Exhibit B; Exhibit C, KSN dated January 29, 2015). As a result, Plaintiff has been labeled as a security threat to Kelly since 1994. (Exhibit B). As Exhibit B indicates, **"UNDER NO CIRCUMSTANCES SHOULD KE (Plaintiff) BE HIRED OR ALLOWED INTO A BRANCH. If ke (Plaintiff) calls for any reason, refer him to corporate & notify security immediately."** (Exhibit B, emphasis in original).

Plaintiff's inappropriate behavior has continued in 2015. (Exhibit C). During a telephone call in January 2015, a Kelly employee was forced to hang up on Plaintiff because Plaintiff became irate when the Kelly employee explained that she could not speak with him any longer and provided Plaintiff with a corporate number to call. (Exhibit C). As recent as June 2015, Plaintiff threatened a Kelly employee with litigation if Kelly did not hire him. (Exhibit D, KSN dated June 16, 2015.)

On May 14, 2015, Plaintiff filed a Charge of Discrimination with the EEOC. (Exhibit A). Plaintiff's Charge is largely unintelligible and simply claims that he has been discriminated against based on an unidentified disability and age. (Exhibit A). Plaintiff's Charge also includes a handwritten portion which alleges that Kelly "has a policy of preferentially hiring young, attractive women over all other classes of employees." (Exhibit A). Plaintiff supports his

allegation with a reference to a "tweet" of Kelly. (Exhibit A). Plaintiff does not provide the content of the "tweet." The EEOC dismissed Plaintiff's Charge without requiring a response from Kelly. (Exhibit E, Dismissal).

Plaintiff then filed the instant action on June 15, 2015. Plaintiff's Complaint is the most recent example of a frivolous action filed by Plaintiff in this Court. Indeed, this Court is well familiar with Plaintiff due to Plaintiff's long history of filing litigation void of any merit. The following is the litigation history of Plaintiff:

1. *Parker v. John Does #1 and #2-100*, Case No. 2:02-cv-07215-JK

2. *Parker v. University of Pennsylvania*, Case No. 2:02-cv-00567-AB

3. *Parker v. Learn the Skills Corp, et al.*, Case No. 2:03-cv-06936-JK

4. *Parker v. Google, Inc. and John Does #1-50,000*, Case No. 2:04-cv-03918-RBS

5. *Parker v. Learn The Skills Corp., et al.* Case No. 2:05-cv-02752-HB

6. *Parker v. Comcast and John Doe*, Case No. 2:05-mc-00157-HB

7. *Parker v. Trustees of the University of Pennsylvania*, Case No. 2:05-cv-04874-PBT

8. *Parker v. Yahoo, Inc. and Microsoft Corporation*, Case No. 2:07-cv-02757-MAM

9. *Parker v. Samuel Sloan, et al.* Case No. 2:08-cv-00829-JCJ

10. *Parker v. Viacom Int'l, Inc., et al.* Case No. 2:08-cv-03630-ER

11. *Parker v. Jacqueline Goldhagen*, Case No. 2:15-cv-03304-TON

Again, each of these lawsuits was filed by Plaintiff in this Court. With the exception of the instant case and *Parker v Jaqueline Goldhagaen* (pending), each of Plaintiff's frivolous "lawsuits" has been dismissed. Kelly has been forced to file the instant Motion because

3

Plaintiff's Complaint is similarly frivolous and is obviously filed for the sole purpose to harass Kelly.

## ARGUMENT

A.   Plaintiff's Complaint Fails to State a Claim

Pursuant to Fed. R. Civ. P. 8(a)(2) a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court set forth a two prong test which a plaintiff must satisfy in order to survive a motion to dismiss in *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v Iqbal*, 129 S.Ct. 1937 (2009). First, a complaint must include well-pleaded factual allegations and second, the allegations must plausibly give rise to an entitlement for relief. *Ashcroft*, 129 S.Ct. at 1950. The factual allegations must contain "enough facts to state a claim to relief that is plausible on its face" to be sufficient. *Bell Atlantic Corp*, 550 U.S. at 570. Further, the standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S.Ct. at 1949. *See also, Emrit v Independent Music Award, IMA*, No. 14-4799; –Fed Appx –; 2015 WL 3482797 (3d Cir.2015). ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")(citations and quotations omitted).

If a Plaintiff fails to satisfy either part of the test, a Defendant is entitled to a dismissal of the complaint under Fed. R. Civ. P. 12(b)(6).  *Fowler v UPMC Shadyside*, 578 F3d 203, 210-211 (3d Cir. 2009). Pursuant to Rule 12(b)(6), a Defendant may "move to dismiss for failure of the pleading to state a claim upon which relief can be granted.". The only issue when determining if an action should be dismissed is whether the complaint is legally sufficient. *Smith v State Farm Mut Auto Ins Co,* 506 Fed Appx 133, 137 (3d Cir.2012).

4

Plaintiff has failed to meet the first prong of the test from *Bell* because he fails to assert "well-pleaded" factual allegations. *Ashcroft*, 127 S.Ct. at 1949. Plaintiff does not provide any facts which support his "Complaint for Violations of the Rehabilitation Act of 1973." Plaintiff does not provide any specific allegations in regard to his employment with Kelly. Similarly, Plaintiff does not provide any allegations and/or reference to an attempt to be re-hired by Kelly. Instead, Plaintiff simply alleges that the named Defendants "don't care" about his "ticket to work." Plaintiff's Complaint fails to provide any factual allegations in support of these allegations and simply alleges that Defendants are required "to care." However, such a bald assertion does not establish the requisite showing that a plaintiff must assert allegations that "plausibly give rise to an entitlement of relief." *Ashcroft, supra.*

Plaintiff's Complaint likewise fails to allege facts which provide the basis for a prima facie case under the Rehabilitation Act of 1973, 29 USC § 701 *et seq* ("Rehabilitation Act"). This is unsurprising considering the Rehabilitation Act only applies to claims of discrimination against **federal agencies**. *Wishkin v Potter*, 476 F3d 180, 184-85 (3d Cir.2007)(quotations and citations omitted). Plaintiff has not and cannot show that Kelly is a federal agency. Even if Plaintiff could show that the Rehabilitation Act provides a cause of action against a corporate entity such as Kelly (which he cannot), Plaintiff's Complaint should still be dismissed. In order to set forth a prima facie case under the Rehabilitation Act, a plaintiff must show 1) that he has a disability, 2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) that he was nonetheless terminated or otherwise prevented from performing the job. *Id.* Plaintiff's Complaint fails to establish a single element referenced above. Plaintiff's Complaint fails to include a single reference to a

disability of Plaintiff. Additionally, Plaintiff's Complaint fails to allege that he is qualified to "perform the essential functions of the job." In fact, Plaintiff's Complaint is void of any reference to the "job" sought by Plaintiff or any details regarding when Plaintiff sought the "job." Instead, Plaintiff baldly asserts that he "is entitled to a job because his skills and the merit system entitle him to a job." Moreover, Plaintiff's Complaint does not include any allegations regarding reasonable accommodations sought or required by Plaintiff. Finally, Plaintiff's Complaint does not allege that he was terminated or "otherwise prevented from performing the job." *Id.* Simply put, the Court is unable to draw any reasonable inference that Kelly is liable for any alleged misconduct and Plaintiff has brought forth a complaint that contains exactly the "defendant unlawfully harmed me allegation[s]" which the Supreme Court prohibited in *Ashcroft*. *Id.* Therefore, this Court should dismiss Plaintiff's Complaint against Kelly pursuant to Fed. R. Civ. P. 12(b)(6).

## RELIEF REQUESTED

WHEREFORE, Defendant Kelly Services, Inc., respectfully requests that this Honorable Court grant Defendant's Motion to Dismiss, and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Dated: July 1, 2015

BY:  *s/Maria G. Perri*
Michael S. Takacs, Esquire
Maria G. Perri, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, Pennsylvania 19103
michael.takacs@wilsonelser.com
maria.perri@wilsonelser.com
Tel: 215-627-6900

6

Fax: 215-627-2665
*Attorneys for Defendant, Kelly Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2015, I electronically filed the foregoing pleading

with the Clerk of the Court using the ECF system which will send notification of

such filing to all participating attorneys, and I hereby certify that I have mailed by

U.S. Postal Service the document to the following non-ECF participant:

Gordon Roy Parker
4247 Locust Street #119
Philadelphia PA 19104

BY:  *s/Maria G. Perri*
Michael S. Takacs, Esquire
Maria G. Perri, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, Pennsylvania 19103
michael.takacs@wilsonelser.com
maria.perri@wilsonelser.com
Tel: 215-627-6900
Fax: 215-627-2665
*Attorneys for Defendant, Kelly Services, Inc.*

8

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 530-2015-02286 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Gordon Ron Parker | (267) 298-1257 | 01-06-1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4247 Locust Street, Apartment 119, Philadelphia, PA 19104 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| KELLY SERVICES | 500 or More | (215) 972-5145 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1650 Market Street, 36th Floor, Philadelphia, PA 19103 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-10-1987 | 11-11-2014 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about July 10, 1987. I have a disability of which Respondent is aware. On or about January 15, 1994, Respondent assigned me to work at Independence Blue Cross. During the course of my time at Independence Blue Cross, I revealed to Lonnie Berger (Male; Co-worker) of Independence Blue Cross' pay-to-play arrangement. My assignment was terminated shortly thereafter. On or about February 16, 1994 Respondent terminated my employment because of what had happened with Independence Blue Cross. On or about November 11, 2014 I inquired about being re-hired by Respondent.

In an Respondent stated the reason for my termination was because I was "disoriented". Respondent has failed to rehire me despite my inquiries.

I believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended, as well as my sex (Male) and in retaliation for engaging in a

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| May 14, 2015 _____ Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 530-2015-02286 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, in that Respondent failed to accommodate my disability, terminated my employment, and most recently has failed to rehire me.

In and around January 2015, Kelly Tweeted a link to its own Kelly-Girl
People as saying it was proud of its history. Kelly Services has a
policy of preferentially hiring young, attractive women over all other classes
of employees. Since being made aware of this charge, Kelly tweeted to
defendant that he had refused assistance, which is not true.

RECEIVED
15 MAY 19 PM 3:35
PHILADELPHIA
DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| May 14, 2016 _____ _Timothy Hann_ <br> Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EXHIBIT B

| Talent | Parker | Gordon | Q | Order # | Q | Created By | Q |
| Customer | | | Q | Created From | | Created To | |
| Site Name | | | Q | Branch | Q | Branch Group | Q |
| Contact | | | Q | Assigned To | Q | Managed By | Q |

FIND

Search Results : 4

| Branch | Created | Type | Reason | Result | Talent | Customer | Site Name | Order # |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 4348 | 16-Jun-2015 | Other | | | Parker Gordon | | | |
| 5131 | 29-Jun-2015 | Information Provided | | | Parker Gordon | | | |
| 5131 | 11-Nov-2014 | Information Provided | | | Parker Gordon | | | |
| 5131 | 12-Mar-2013 | Information Provided | | | Parker Gordon | | | |

10  items per page                                                      1 - 4 of 4 items

Resolution/Notes
This file is for documentation purposes only. KE has been periodically calling the branch since 1994, making threats and abusing the staff. We have filed several police reports with the Philadelphia Police Department against ke, and corporate safety & security has documentation on file. We also have ke's original PR with documentation on his abusive phone calls & behavior. UNDER NO CIRCUMSTANCES SHOULD KE BE HIRED OR ALLOWED INTO A BRANCH. If ke calls for any reason, refer him to corporate & notify security immediately.

This file is for documentation purposes only. KE has been periodically calling the branch since 1994, making threats and abusing the staff. We have filed several police reports with the Philadelphia Police Department against ke, and corporate safety & security has documentation on file. We also have ke's original PR with documentation on his abusive phone calls & behavior. UNDER NO CIRCUMSTANCES SHOULD KE BE HIRED OR ALLOWED INTO A BRANCH. If ke calls for any reason, refer him to corporate & notify security immediately.

# EXHIBIT C



SENT TO GLOBAL SECURITY

Hello,

Gordon Parker (aka Ray Parker, Roy Parker, Gordon Roy) just called in. Last time he called in (11-Nov-2014) and he was looking into, we found out there were numerous police reports filed by Kelly Services against him.

He has recently reported an EEOC report against us and called to give me an `update.¿ When I told him I could not speak to him any longer and I could give him a corporate number to call, he became irate and I had to hang up.

Best,

Krista

# EXHIBIT D

| Type | [18] | | | Reason | [48] | | Result | [48] | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Talent | Parker | Gordon | 🔍 | Order # | | 🔍 | Created By | | | 🔍 |
| Customer | | | 🔍 | Created From | | 📅 | Created To | | 📅 | |
| Site Name | | | 🔍 | Branch | | | Branch Group | | | 🔍 |
| Contact | | | 🔍 | Assigned To | | 🔍 | Managed By | | | 🔍 |

**Find**

Search Results : 4

| Branch | Created | Type | Reason | Result | Talent | Customer | Site Name | Order # |
|---|---|---|---|---|---|---|---|---|
| 5131 | 25-Nov-2015 | Other | | | Parker Gordon | | | |
| 5131 | 26-Nov-2015 | Information Provided | | | Parker Gordon | | | |
| 5131 | 11-Nov-2014 | Information Provided | | | Parker Gordon | | | |
| 5131 | 03-Mar-2011 | Information Provided | | | Parker Gordon | | | |

10   Items per page                                     1 - 4 of 4 items

**Resolution Notes**

Gordon Parker called to say he was available and to give us an update on his lawsuit filed with EEOC vs Kelly. Indicated he was employed w Kelly since 1987 when he was unskilled but now as a paralegal candidate Kelly wasn't doing anything to get him work. conversation shifted and he went on to say he would name me in the lawsuit. I politely thanked him for his call and informed him I would mark his as "called in and available" and ended the conversation.

Gordon Parker called to say he was available and to give us an update on his lawsuit filed with EEOC vs Kelly. Indicated he was employed w Kelly since 1987 when he was unskilled but now as a paralegal candidate Kelly wasn't doing anything to get him work. conversation shifted and he went on to say he would name me in the lawsuit. I politely thanked him for his call and informed him I would mark his as "called in and available" and ended the conversation.

# EXHIBIT E

EEOC Form 161 (11/09)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Gordon Parker
4247 Locust Street
Apartment 119
Philadelphia, PA 19104

From: Philadelphia District Office
801 Market Street
Suite 1300
Philadelphia, PA 19107

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative |  | Telephone No. |
|---|---|---|---|
| 530-2015-02286 | Legal Unit |  | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Spencer H. Lewis, Jr.,
District Director

6/2/15
(Date Mailed)

cc:    Erinn Studier
Diversity Analyst
KELLY SERVICES
Global Human Resources - Diversity
999 West Big Beaver Road
Troy, MI 48084

Exhibit C



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Philadelphia District Office

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2652, 2848 & 2604

Our Reference:       Parker v. Kelly Services
                     Charge No. 530-2015-02286

Mr. Gordon Parker
42-7 Locust Street
Philadelphia, PA 19104

Dear Mr. Parker:

This is with reference to your correspondence and subsequent communication with this office in which you alleged employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, the Americans with Disabilities Act of 1990 (ADA), as amended, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, by the above-named respondent.

The evidence indicates that you filed a charge (Charge No. 530-2015-00663) against the same Respondent on or about November 25, 2014. This charge was closed on or about May 27, 2015 with a no cause finding and you were issued your Notice of Right to Sue. The allegations in your current charge (Charge No. 530-2015-02286) allege the same discriminatory behavior, except you further allege that Respondent has retaliated against you by tweeting in January 2015 that you had refused assistance during your employment with them in 1994. This additional allegation does not constitute retaliation under any of the statutes that the Commission enforces.

While we fully understand that, the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws we enforce. For this reason, we will issue you a Dismissal and Notice of Rights, which will enable you to file suit in U.S. District Court within 90 days of your receipt of that Notice if you wish to pursue this matter further.

Should you wish to obtain a copy of the administrative file for this charge, please write to the following address to make such a request. You must do so within the above-referenced 90-day period, which can be extended if you do file a lawsuit in court concerning this matter. Please be advised that there may be a fee if you make such a request for file disclosure. Furthermore, please note that failure to receive requested documents in a timely manner does not extend the time period for filing a lawsuit.

File Disclosure Unit
EEOC-Philadelphia District Office
801 Market St., Suite1300
Philadelphia, PA 19107

We regret that we could not be of further service to you in this matter.

Sincerely,

_____
Date

Casey Callahan
Federal Investigator

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

Charge Presented To:          Agency(ies) Charge No(s):

[X] EEOC                       530-2015-02755

Pennsylvania Human Relations Commission          and EEOC

Name (Indicate Mr., Ms., Mrs)

Mr. Golden Ray Porter

Street Address

4247 Locust Street, Apartment 112, Philadelphia, PA 19104

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|------|------------------------|-------------------------------|
| KELLY SERVICES | 500 or More | (215) 972-5145 |

Street Address: 1650 Market Street, 36th Floor, Philadelphia. PA 19103          City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|------|------------------------|-------------------------------|
|  |  |  |

Street Address          City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[X] RETALIATION   [X] AGE   [X] DISABILITY   [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 07-10-1987      Latest: 11-11-2014

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about July 10, 1987. I have a disability of which Respondent is aware. On or about February 16, 1994, Respondent assigned me to work at Independence Blue Cross. During the course of my time at Independence Blue Cross, I revealed to Lonnie Berger (   ; Co-worker) of Independence Blue Cross' pay-to-play arrangement. My assignment was terminated shortly thereafter. On or about February 16, 1994 Respondent terminated my employment because of what had happened with Independence Blue Cross. On or about November 11, 2014 I inquired about being re-hired by Respondent.

Respondent stated the reason for my termination was because I was "disoriented". Respondent has failed to rehire me despite my inquiries.

I believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended, as well as my sex (Male) and in retaliation for engaging in a

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: May 14, 2015          Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

RECEIVED
15 2019
DISTRICT OFFICE
3:35

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:
☐ FEPA
☒ EEOC

Agency(ies) Charge No(s):

530-2015-02285



Pennsylvania Human Relations Commission
State or local Agency, if any

and EEOC

protected activity in violation of Title VII of the Civil Rights Act of 1964 as amended, in that Respondent failed to accommodate my disability, terminated my employment, and most recently has failed to rehire me.

In or around January 2015, Kelly Tweeted a link to its old new-ən People as saying it was proud of its history. Kelly Services has a policy of preferentially hiring young, attractive women over all other classes of employees. Since being made aware of this charge, Kelly tweeted to defendant that he had refused assistance, which is not true.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| --- | --- |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| May 14, 2015          _Charging Party Signature_     Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED
15 MAY 19 PM 3: 35
PHILADELPHIA
DISTRICT OFFICE

Revised 11/00

### Information For Complainants & Election Option
### To Dual File With The
### Pennsylvania Human Relations Commission

**Parker Gordon vs. Kulf; Services**

EEOC No. 530-2015-02296

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with the PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in manner which could affect the outcome of your case.

Complaints filed with PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charged files with PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC

Since you have chosen to file you charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year of filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

#### [Sign and date appropriate request below]

I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

*I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4909, relating to unsworn falsification to authorities.*

_____
Signature and Date

*I do not want my charge dual filed with PHRC.*

_____
Signature and Date

1181 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Gordon Parker**
**4247 Locust Street**
**Apartment 119**
**Philadelphia, PA 19104**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) | |

| EEOC Charge No | EEOC Representative | Telephone No |
|---|---|---|
| 530-2015-02286 | **Legal Unit** | (215) 440-2828 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |

| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |

| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |

| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |

| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |

| | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |

| | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your **lawsuit must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Spencer H. Lewis, Jr.,
**District Director**

6/2/15
(Date Mailed)

Enclosures(s)

cc:
**Erinn Studier**
**Diversity Analyst**
**KELLY SERVICES**
**Global Human Resources - Diversity**
**999 West Big Beaver Road**
**Troy, MI 48084**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **GORDON ROY PARKER,** | FILED |
| **Plaintiff** | JUL 0 7 2015 |
| **v.** | |
| **KELLY SERVICES, INC. AND INDEPENDENCE BLUE CROSS, LLC ("IBX")** | Case No:  15-cv-3337-PBT |
| **Defendants** | |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, Plaintiff in the above-styled action, hereby certify that I have served

a copy, by **hand delivery**, to Defendants' counsel of record, of the following:

1. Plaintiff's Response to Defendant Kelly's Motion To Dismiss
2. Plaintiff's Motion For Leave To Amend Complaint (Complaint exhibit)
3. Plaintiff's Motion For Partial Summary Judgment

Maria G. Perri, Esq. and Michael S. Takacs, Esq.          Rachel J. Gallagher, Esq.
**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**     **Fox Rothschild et al.fa**
Two Commerce Square, 2001 Market St., #3100             2000 Market Street, 20th Floor
Philadelphia, PA 19103                                  Philadelphia, PA  19103
Attorney For Defendant Kelly Services, Inc.             Attorney For Defendant IBX

This the 6th day of July, 2015.

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**