IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER,<br><br>Plaintiff<br><br>v.<br><br>KELLY SERVICES, INC. AND<br>INDEPENDENCE BLUE CROSS, LLC<br><br>Defendants | Case No:   15-cv-3337-PBT |

## ORDER

AND NOW, this ____ day of October, 2015, upon consideration of Plaintiff's Motion For Reconsideration, it is hereby ORDERED that the motion is GRANTED.

SO ORDERED.

_____
J.



IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **GORDON ROY PARKER,**<br><br>Plaintiff<br><br>v.<br><br>**KELLY SERVICES, INC. AND INDEPENDENCE BLUE CROSS, LLC**<br><br>Defendants | Case No: 15-cv-3337-PBT |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF DISMISSAL**

**Plaintiff Gordon Roy Parker,** in the above-styled action, moves this Court for reconsideration of its Order of September 23, 2015 (Docket #__) dismissing this action. Alternatively, he moves this court for a declaration that his disability makes him unemployable. In support thereof, he sets forth and avers the following:

1. This Court abused discretion by dismissing this case and denying leave to amend.
2. Judicial economy is not served by dismissal.
3. This case was decided in a game of **Beat The Clock**, not on the merits.
4. Plaintiff had ineffective assistance of counsel.
5. Plaintiff was entitled to appointed counsel.[1]
6. The recent NLRB "joint employer" ruling presents a change in controlling law.
7. As a "joint employer," the federal government is now liable for Kelly's conduct.
8. As a "joint employer," IBX is now liable for Kelly's conduct.
9. Ongoing retaliation justifies leave to amend the Complaint.

---

[1] 42 USC 2000e-5(f)(1).

10. ***All*** employers are state actors, receive federal funds and are covered by RA §504.

WHEREFORE, for the reasons set forth hereinabove, the instant motion should be **granted**. A Memorandum of Law and proposed form of Order are attached.

This the 5th day of October, 2015.

*[signature]*

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER,<br><br>Plaintiff<br><br>v.<br><br>KELLY SERVICES, INC. AND<br>INDEPENDENCE BLUE CROSS, LLC<br><br>Defendants | Case No: 15-cv-3337-PBT<br><br>FILED UNDER PROTEST |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR RECONSIDERATION

**Plaintiff Gordon Roy Parker** submits this Memorandum of Law in support of the instant motion.

## Memorandum Of Contents

**Memorandum Of Contents** .................................................................................................... ii
**Memorandum Of Points And Authorities** ............................................................................ iii

I. **BACKGROUND** ............................................................................................................. 1
II. **LEGAL STANDARD** .................................................................................................... 3

    A. **DECISION ON THE MERITS** ................................................................................ 3
    B. **GRANTING LEAVE TO AMEND WITH DISMISSAL** .......................................... 4
    C. **INEFFECTIVE ASSISTANCE OF COUNSEL** ........................................................ 4
    D. **APPOINTMENT OF COUNSEL** ............................................................................. 4

III. **ARGUMENT** ................................................................................................................. 5

    A. **THE REHABILITATION ACT CLAIM WAS PROPERLY PLED** ...................... 6

        1. The Original Complaint Was Sufficient. The Allegations Were Not Conclusory .... 7

        2. Defendant Kelly Is A State Actor Who Places Federal Employees And Is Therefore A Joint Employer With The Federal Government Covered By Section 504 Of The Rehabilitation Act ................................................. 7

        3. The Complaint Alleged Violations Of The Entire Rehabilitation Act ...................... 8

        4. Through FICA, All Employers Are State Actors Covered by Section 504 .............. 8

        5. The Rehabilitation Act's State-Law Equivalents Give Rise To A Claim Under 42 USC §1983 ................................................................................. 8

    B. **LEAVE TO AMEND SHOULD HAVE BEEN GRANTED** ..................................... 9

        1. Granting Leave To Amend The Rehabilitation Act Claim Was Proper .................. 9
        2. Granting Leave To Add The Other Claims Was Proper. ......................................... 9
        3. Post-Filing Conduct And Changes In Law Support Leave To Amend .................. 9

    C. **PLAINTIFF HAD INEFFECTIVE ASSISTANCE OF COUNSEL** ...................... 10

    D. **PLAINTIFF SHOULD HAVE BEEN GRANTED COUNSEL PURSUANT TO 42 USC 2000e-5(f)(1).** ......................................................................... 10

IV. **CONCLUSION** ............................................................................................................. 11

## Memorandum Of Points And Authorities

*denotes Supreme Court case

**Cases:**

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ..........................................4

*Harad v. Aetna Cas. And Sur. Co.* 839 F.2d 979 (3rd Cir. 1988).......................................................3

*Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993) ............................................................4

*Lowrey v. Texas A & M Univ. Sys.*, 117F.3d 242, 247 (5th Cir. 1997) ............................................4

*Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).................................................4

*Poindexter v. FBI*, 737 F.2d 1173 (D.C. Cir. 1984)..........................................................................5

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).........................................................................4

***Strickland v. Washington**, 466 U.S. 668 (1984) ..........................................................................4

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984)...........................3

**Statutes/Other:**

42 USC §1983....................................................................................................................................8

42 USC §2000e-5(f)(1)(B) ................................................................................................................5

*Moore's Federal Practice*, supra S 15.15[3], at 15-47 to -48 (3d ed. 2000) ...................................4

## I. BACKGROUND

To the extent Plaintiff is allowed, without sanction, to feel betrayed, and to express his righteous anger, this Court should consider it felt and expressed. Consequently, this Motion is filed under protest.

With yet another unjust dismissal, supported by a collection of nonsequiturs posing as an opinion, this Court has all but declared *open season* on Plaintiff, for anyone who wishes to deny him work, defame him, or do anything which might otherwise get them sued. It is small wonder that Defendants, and others, cynically believe they are allowed to break the law with impunity; *they are*. Plaintiff's civil-rights lawsuits, and related Title VII activity, were done in the public interest, something this Court seems not to consider served by his action. Plaintiff is living proof why even ten year-olds are taught not to snitch. Let's review the underlying incident:

1. In February, 1994, Plaintiff was sent, for the *second* time, on an assignment at Defendant IBX, from Defendant Kelly.

2. While on the assignment, Plaintiff learned of a "pay to play" scheme involving jobs for political favors, run by IBX and former State Senator Vincent Fumo, convicted of racketeering and sentenced to prison in 2009.

3. When Plaintiff notified a (Kelly temp) coworker of what he had learned, the temp "snitched out" Plaintiff, whose assignment was immediately terminated, shortly before his employment with joint employer Kelly was then terminated, in retaliation for Plaintiff's whistleblowing (he had mentioned Title VII lawsuits as part of his activism).

4. Plaintiff was informed (or not refuted) by the director of the Philadelphia Commission on Human Relations (Kevin Vaughn) that he'd be "taking his life into his hands by

going up against Fumo," who Plaintiff had heard many times was mafia-connected (he is now a RICO felon).

5. Rather than advocate for Plaintiff, as his *employment agent*, by referring him to the proper disability agencies (SSA, OVR, etc.), Defendant Kelly (and, by extension, IBX) retaliated, *blacklisted*, and even reported Plaintiff to the Philadelphia Police whenever he contacted Defendant Kelly, hoping to get his career back on track. As this was discovered post-filing, and as leave to amend was denied, these events will give rise to a new cause of action if this decision holds.

6. The ongoing fear for his physical safety ensured Plaintiff's silence, until 2014, not because the threat (or the retaliation) had ceased, but because Plaintiff, no longer in the prime of his health, simply no longer fears death, as forty-eight has a much shorter future than twenty-seven, especially in his case.

7. Since 1994, the rights of disabled workers have been exponentially strengthened, yet neither Defendant ever saw fit to update Plaintiff's status with regard to these changes, instead choosing to have Defendant Kelly deem Plaintiff a *security risk*, their pretext for defrauding the federal government into paying Plaintiff SSDI benefits to which he is certainly entitled, but which he would never have needed but for the lie that he is not employable, a lie rubber-stamped even by this Court.

8. In 2014 – around the very time Plaintiff again sought employment with both defendants -- the Workforce Innovation And Opportunity Act exponentially increased affirmative-action requirements for the disabled, with neither Defendant updating their policies.

9. Post-filing, the discrimination and retaliation have continued.

10. On the morning of July 7, 2015, Plaintiff offered Defendant IBX the opportunity to be dismissed from this case, so that he could simplify the case by amending without leave against Kelly, and dropping IBX. Plaintiff was unaware of his rights under Federal Rule 41(a)(1)(A)(i) to file a Notice of Dismissal without "tipping off" IBX, who cut off this possibility (at their own expense and risk of liability) by filing an Answer, declaring "the pleadings are now closed," and filing the successful (for now) instant motion.

11. Shortly after Defendant IBX filed its Answer, Plaintiff moved this court for leave to Amend his Complaint, attaching the proposed Amended Complaint as Exhibit A to that motion, on which this Court seems not to have yet ruled.

These events should have led to, at worst, dismissal with leave to amend. This ruling, if allowed to stand, convinces Plaintiff that the Courts are as big or an even bigger problem than the employers, as the latter is given a green light by the inaction of the former. That these suits are filed in the public interest nationalizes the injustice.

## II.  LEGAL STANDARD

### A.  LEGAL STANDARD FOR DECISION ON THE MERITS

Though addressing vacation of a default judgment, the situation is analogous to the instant case. In Harad v. Aetna Cas. And Sur. Co. 839 F.2d 979 (3rd Cir. 1988), the Court noted:

> [The Third Circuit] has adopted a policy disfavoring default judgments and encouraging decisions on the merits, Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir.1951). [Nevertheless], the decision to vacate a default judgment is left to the sound discretion of the trial court. In exercising this discretion, however, ***the court must[2] consider whether vacating the default judgment will visit prejudice on the plaintiff***, whether the defendant has a meritorious defense, and whether the default was the result of the defendant's culpable conduct. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir.1984).

---

[2] The dictionary defines *must*: "be obliged to; should (expressing necessity), e.g., "you *must* show your ID card."

3

B. **LEGAL STANDARD FOR GRANTING LEAVE TO AMEND WITH DISMISSAL**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "is *viewed with disfavor and is rarely granted*." Lowrey v. Texas A & M Univ. Sys., 117F.3d 242, 247 (5th Cir. 1997) (Emphasis added). In the event a complaint fails to state a claim, unless amendment would be futile, the District Court *must* give a plaintiff the opportunity to amend [the] complaint. Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000). Phillips went on to explicitly affirm the right to amend as a natural defense to a 12(b)(6) motion:

> It does not matter whether or not a plaintiff seeks leave to amend. We have instructed that *if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment*, unless an amendment would be inequitable or futile.[3]

Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Burlington"); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id.; *Moore's Federal Practice*, supra S 15.15[3], at 15-47 to -48 (3d ed. 2000).

C. **LEGAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL**

Under the *Strickland test*:

> (b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Pp. 466 U. S. 691-696.[4]

D. **LEGAL STANDARD FOR APPOINTMENT OF COUNSEL**

---

[3] See also Shane v. Fauver, 213 F. 3d 113 (2006)
[4] Strickland v. Washington, 466 U.S. 668 (1984),

4

42 USC 2000e-5(f)(1)(B) states, in pertinent part:

> Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.

Poindexter v. FBI[5] directs district courts to consider "(1) the ability of the plaintiff to afford an attorney; (2) the merits of the plaintiff's case; (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without aid of counsel," id. at 1185.

### E. NEW LEGAL STANDARD FOR JOINT EMPLOYERS

On August 27, 2015 – more than two months after this case was filed, the National Labor Relations Board (NLRB) held that:

> In a 3-2 decision involving Browning-Ferris Industries of California, the National Labor Relations Board refined its standard for determining joint-employer status. The revised standard is designed "to better effectuate the purposes of the Act in the current economic landscape." With more than *2.87 million of the nation's workers employed through temporary agencies* in August 2014, the Board held that its previous joint employer standard has failed to keep pace with changes in the workplace and economic circumstances. In the decision, the Board applies long-established principles to find that *two or more entities are joint employers of a single workforce if (1) they are both employers within the meaning of the common law; and (2) they share or codetermine those matters governing the essential terms and conditions of employment.*[6] (Emphasis Added)

### III. ARGUMENT

The instant ruling in this case, as it stands now, does nothing to resolve the underlying conflict – a disabled worker, for whom our government has made finding employment an absolutely top priority – and is not even dispositive for the single claim it adjudicated, for that claim shall renew perpetually for as long as the joint-employer Defendants punch Plaintiff's *Ticket To Work*. That the dismissal comes against a nearly-incapacitated (at the time) *pro se*, who was drafting pleadings while suffering a condition Defendant IBX can verify from its

---

[5] 737 F.2d 1173 (D.C. Cir. 1984)
[6] https://www.nlrb.gov/news-outreach/news-story/board-issues-decision-browning-ferris-industries

5

insurance records, one which landed him in the hospital on July 8, 2015, one day after Defendant won this game of *Beat The Clock*.

Plaintiff could easily shut up, stay home, play chess for fourteen hours a day, as he is doing now to keep his mind sharp, and live a financially-stable existence with his indirect "bribe" of $1,200.00+ a month (and growing) government entitlement benefits – indeed, Plaintiff now collects more than the after-tax amount of the paycheck which gave rise to this lawsuit. He could just as easily ignore the *public interest* which sparked this activism, allowing corrupt employers like the Defendants to roam free over a workforce largely preoccupied not with social justice, but its own "meager-yet-undeserved" paycheck. Had he the proclivity, he could have milked his 1994 "diagnosis" for all it was worth, using Defendants' own lies to land him on SSDI at double or more his current benefit level, for an additional twenty-one years. Instead, he continued, through 2010, to earn just enough to legally disqualify himself from a more lucrative life on the dole.

Plaintiff's legal strategy was as sound as it gets; his reliance on being given leave to amend was correct. Even without leave to amend, his *concise* Complaint – the opposite of the *bucket-of-mud* for which a previous Complaint of his is the Third-Circuit poster-child[7] – a properly pled claim under the Rehabilitation Act was set forth. Alternatively, leave to amend *must* be granted in this situation. Plaintiff may have lost the round of *Beat The Clock*, but the next show on tap is the *Exact Words* episode of *The Brady Bunch*.[8] In this case, the word for the day is *MUST*, as in "the court *must* grant leave to amend," the Third Circuits *exact words*.

---

[7] The Complaint in Parker v. Learn The Skills Corp. et al (cite omitted) was held to a heightened pleading standard due to one of the defendants being pro se himself.

[8] In the episode, Greg circumvented a driving ban on the family car by borrowing a friend's car, after which he was tortured for the remainder of the episode by being held to his *exact words*, as he had done to his parents.

6

## A. THE REHABILITATION ACT CLAIM WAS PROPERLY PLED

### 1. The Original Complaint Was Sufficient. The Allegations Were Not Conclusory.

Song lyrics, by design, are as *concise* a method of writing as exists:

> *Plaintiff's on SSDI; it's bringing him down*
> *But he would much rather be, working in town*
> *He's got a ticket to work…but they don't care*

Plaintiff made abundantly clear to this court that 1) he is disabled, on SSDI, and, by definition, covered by the Rehabilitation Act, 2) in the *Ticket To Work* program, 3) actively seeking work, 4) qualified to work for Defendants; and 5) Defendants refused to hire him in violation of the Rehabilitation Act of 1973, which he said makes them "*required, by law, to care*," easily the legal equivalent of actively applying for work, as he had done with both Defendants during the relevant time period. The new affirmative-action requirements created by the WIOA in 2014 – outreach, a goal of seven percent incumbency, and actively asking applicants how they can be accommodated – canonize the longstanding public interest in favor of hiring Plaintiff and those similarly situated.

For as long as Plaintiff remains on SSDI, and seeking work, Defendants are required, under the Rehabilitation Act, to "care." To validate Defendants' blacklisting of Plaintiff, by giving them license to "not care" is to turn Plaintiff into a Rosa Parks, welcome only on certain sections of the employment bus, resulting in the type of segregated workforce also explicitly enjoined by the WIOA. Put simply, the joint-employer Defendants – each of whom hired Plaintiff liberally prior to the incident which gave rise to this lawsuit – have no legitimate reason not to hire Plaintiff.

### 2. Defendant Kelly Is A State Actor Who Places Federal Employees And Is Therefore A Joint Employer With The Federal Government Covered By Section 504 Of The Rehabilitation Act.

7

Even prior to the NLRB ruling, which represents a change in controlling law, Defendant *The Kelly GIRL People* has been placing employees directly with the federal government, calling itself the ***premier government workforce solutions provider:***



http://www.kellyservices.us/US/About-Us/Government-Workforce-Solutions/ (Retrieved 10/3/15)

3. **The Complaint Alleged Violations Of The Entire Rehabilitation Act, Not Just §503(a).**

The ***exact words*** of the original Complaint referenced the entire Rehabilitation Act. To the extent it did not, this is easily curable by amendment.

4. **Through FICA, All Employers Are State Actors Covered by Section 504.**

Though redundant in this case due to 3) above, Section 504 covers any entity which receives federal funds. Matching FICA contributions are federal funds, making all employers state actors covered by Section 504 of the Rehabilitation Act of 1973.

5. **The Rehabilitation Act's State-Law Equivalents Give Rise To A Claim Under 42 USC §1983.**

8

While 42 USC §1983 does not explicitly cover violations of *federal* law by state actors, it does so by extension whenever, as in the case of the Rehabilitation Act, there are state-law equivalents violated under color of law. With Defendant Kelly a state actor (it places federal employees), and Defendant IBX now a joint employer, and with a host of other state disability laws violated by these state actors, Plaintiff has a valid claim under 42 USC §1983, even if not a direct claim under Section 503 of the Rehabilitation Act.

### B.  LEAVE TO AMEND SHOULD HAVE BEEN GRANTED.

#### 1. Granting Leave To Amend The Rehabilitation Act Claim Was Proper.

As noted, the Rehabilitation Act claim (and related disability claims under the ADA and Title VII) will renew perpetually until it is adjudicated one way or another that Plaintiff is or is not a legitimately qualified worker for this employment. If he is, he should be hired, and if not, he should remain on SSDI. There is no middle ground to this any more than there are sections of a bus reserved for the (mentally) disabled; workforce segregation is now illegal.

#### 2. Granting Leave To Add The Other Claims Was Proper.

With its ruling, the Court leaves the remaining claims in the Amended Complaint intact, for refiling by Plaintiff. His Title VII claims, which are ongoing, and which include post-filing conduct, were well within the time limits when Plaintiff sought to amend this action rather than filing a new one. At the very least, judicial economy supports leave to amend, as these claims are going to wind up litigated regardless.

#### 3. Post-Filing Conduct And Changes In Controlling Law Support Leave To Amend.

Defendant Kelly's responses revealed its true opinion of Plaintiff, who they not only intended never to hire again, but who they repeatedly disparaged to the Philadelphia Police in clear retaliation for his whistleblowing while on assignment at Defendant IBX. Since 1994,

9

Defendant Kelly has been actively retaliating against Plaintiff, not content simply to deny him employment, but to attempt to demolish his reputation literally all over the city, all in defense of a RICO-violating *pay-to-play* scheme involving one of its major clients. These claims will give rise to a new cause of action if the instant one is not restored here or on appeal.

## C. PLAINTIFF HAD INEFFECTIVE ASSISTANCE OF COUNSEL

As Plaintiff's insurer during this time, Defendant IBX has, in its possession, the sordid tale of Plaintiff's chronic, potentially life-threatening (yet treatable) physical concern that landed him in the hospital mere *hours* after filing for leave to amend this case, a concern which has been troubling him since April, 2015. Fool or not, Plaintiff's client had an incapacitated attorney whose functionality for this complex civil litigation was insufficient to survive the game of *Beat The Clock*, whereas a healthy Plaintiff would simply have moved for voluntary dismissal under Federal Rule 41(a)(1)(A)(1), as he has in two other cases.

## D. PLAINTIFF SHOULD HAVE BEEN GRANTED COUNSEL PURSUANT TO 42 USC 2000e-5(f)(1).

His physical limitations during this case aside, Plaintiff should have been granted counsel pursuant to 42 USC 2000e-5(f)(1), by which a Court seeks *voluntary* appointment of counsel. Rather than presuming that no such counsel would have accepted an appointment, Plaintiff – and all similarly-situated litigants – deserve the opportunity to find out from the market at large, not in *dicta*. Plaintiff knows of several attorneys who very well may gladly have accepted such an appointment, if asked by this Court. As a disabled litigant, Plaintiff should not have been required to move for this, but even able-bodied litigants should not have to deal with unnecessary legal uncertainty which deprives many deserving Plaintiffs of counsel which would not cost this Court one cent to appoint.

10

## IV. <u>CONCLUSION</u>

For the reasons set forth hereinabove, the instant motion should be **granted**.

This the 5th day of October, 2015.

*[signature]*

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

11

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,** : <br> : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> **KELLY SERVICES, INC. AND** : <br> **INDEPENDENCE BLUE CROSS, LLC** : <br> **("IBX")** : <br> : <br> **Defendants** : | Case No: 15-cv-3337-PBT |

### CERTIFICATE OF SERVICE

I, Gordon Roy Parker, Plaintiff in the above-styled action, hereby certify that I have served

a copy, by regular mail and e-mail, to Defendants' counsel of record, **Plaintiff's Motion For**

**Reconsideration Of Dismissal** as follows:

> Maria G. Perri
> Wilson, Elser, Moskowitz,
> Edelman & Decker, LLP
> Two Commerce Square
> 2001 Market Street, Suite 3100
> Philadelphia, PA 19103
> Attorney for Defendant Kelly

> Rachel J. Gallagher
> Fox Rothschild, LLP
> 2000 Market Street, 20th Floor
> Philadelphia, PA 19103
> Attorney for Defendant IBX

This the 5th day of October, 2015.

_____
Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
PLAINTIFF